IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DEVIN KILPATRICK and RONDA CONN, | ) ) ) |
| Plaintiffs, | ) 7:03CV5017 ) |
| vs. | ) ORDER ) |
| PAT KING, KATHY CARTER, RON ROSS, STEVEN W. WILSON, and HOLLY BRANDT, | ) ) ) ) |
| Defendants. | ) ) |

This matter is before the court on the plaintiffs' Motion to Compel Discovery and for Award of Reasonable Attorney's Fees (Filing No. 208). The plaintiffs filed a brief (Filing No. 222), an index of evidence (Filing No. 135) and two supplemental indexes of evidence (Filing Nos. 213 and 214) in support of the motion.[1] The defendants filed a brief (Filing No. 226) and an index of evidence (Filing No. 227) in opposition to the motion. The plaintiffs did not file any reply brief or evidence.

On October 26, 2005, the plaintiffs took the deposition of the defendant Steven W. Wilson (Wilson). During the deposition, the deponent refused to answer certain questions posed based on his assertion of the attorney-client privilege. The plaintiffs seek an order compelling Wilson to fully respond to the subject questions. Additionally, the plaintiffs seek an order allowing them to complete any follow-up discovery which is necessary and the attorney fees and costs associated with the motion to compel.

## BACKGROUND

The plaintiffs have filed this suit pursuant to 42 U.S.C. § 1983, alleging violations of their civil rights arising from an investigation and prosecution of claims of child abuse. **See**

---

[1] The court will not consider the index of evidence at Filing No. 214, as the contents are not referenced in the plaintiffs' brief or motion. Further, Filing No. 213 shall be sealed because it contains information that shall be mandatorily redacted under the E-Government Act of 2002, Pub. L. No. 107-347, 116 Stat. 2899 (codified at 5 U.S.C. §§ 3701-3707 and scattered sections); **see also** NECivR 5.3(a)(1). Counsel are reminded to comply with all filing requirements with regard to the privacy policy.

Filing No. 146 (Third Amended Complaint).  Relevant to the instant motion, in the second claim for relief, the plaintiffs allege retaliation for engaging in a protected activity.  The plaintiffs allege the defendants placed their names on the Central Register of Abuse and Neglect (the Central Register) and refused to remove the names based on the plaintiffs' speaking to newspaper reporters about their alleged ill treatment, filing the instant lawsuit and requesting an inquiry into the defendant Pat King's conduct.  The plaintiffs had alleged that Wilson participated in the decision to place (and leave) the plaintiffs' names on the Central Register.

The defendant Pat King (King) is a Protection and Safety Worker for Nebraska Department of Health and Human Services (NDHHS).  NDHHS is responsible for investigating reports of suspected child abuse or neglect.  In August 2002, King became involved in an investigation after Ronda Conn's (Conn) minor child, J.B., alleged Devin Kilpatrick (Kilpatrick) struck him (the child) in the face.  **See** Filing No. 146, ¶¶ 4-5.  The plaintiffs allege King threatened Conn that if she supported Kilpatrick then Conn would lose custody of the child.  *Id.* ¶ 8.  Kilpatrick was ultimately acquitted of a felony child abuse charge and the juvenile court proceedings related to custody were terminated.  *Id.* ¶ 11.  The plaintiffs allege King's supervisor was Holly Brandt (Brandt) and Brandt's supervisor was Kathy Carter (Carter).  Further, the plaintiffs allege King, Brandt and Carter made the decision to place the plaintiffs on the Central Register.  The plaintiffs allege Wilson made the decision to deny the plaintiffs' request to be removed from the Central Register.

Wilson, a Program Specialist with NDHHS, reviews all initial requests for expungement of entries on the Central Register.  **See** Filing No. 185, Exhibit 4 ¶ 1 (Wilson Affidavit).  In his September 16, 2005 affidavit, Wilson states that after he received the plaintiffs' request for expungement he "reviewed the related files, including color photographs of the alleged victim, J.B., and consulted with legal counsel. [Wilson] made the determination that the entries should remain on the Central Register at [that] time."  *Id.* ¶ 3.  Further, Wilson attested his "determination that expungement should not occur at [that] time was made solely on the basis of [his] review of the evidence in the case and [his] agreement with the determination of Holly Brandt that there was a preponderance of evidence in this case that indicates that it is more likely than not the alleged abuse

occurred." *Id.* ¶ 4. Wilson also affirmed he had no role in the initial decision to place the plaintiffs' names on the Central Register. *Id.* ¶ 5.

During the October 26, 2005 deposition, counsel for the plaintiffs asked Wilson questions about how he arrived at the July 8, 2004 decision to deny expungement. Wilson explained he consulted counsel about the decision. Wilson asserted the attorney-client privilege to avoid responding to certain of the deposition questions. The plaintiffs specifically reference eleven pages of the deposition transcript where Wilson asserted the attorney client privilege, pages 17-19, 34, 45, 49, 51-53, 69 and 70[2]. Initially, counsel for the plaintiff asked Wilson about how he went about making the decision to deny expungement. **See** Filing No. 213, p. 14-17. In particular, counsel inquired about the weight given, during the expungement decision making process, to the jury verdict in the criminal proceeding against Kilpatrick, as follows. *Id.*

> Q. Tell me, what value did – was decided to be placed on the acquittal?
> A. I don't know.
> Q. You were part of the conversation [with Robert Wheeler]?
> A. I was part of the conversation, and I believe the conversation was whether we could support that there was enough evidence for the inconclusive listing on the Central Register.
> Q. Tell me what was said relative to the jury verdict of not guilty.
> A. I don't recall.
> Q. Was it even discussed?

**See** Filing No. 213, p. 16-17.

At that point, counsel for the defendant objected on the basis of a privileged communication between Robert Wheeler, from the NDHHS legal division, and Wilson. *Id.* at 17; **see also** *Id.* at 5. Wilson refused to waive the privilege. *Id.* at 17-19. Wilson also stated Doug Dexter of the Attorney General's Office may have been given copies of communications, but was not involved in the consultations. *Id.* at 19-20. Later in the

---

[2] The court could find no assertion of the attorney-client privilege, or reference thereto, on page 70.

deposition while discussing the photographs of the child's injuries, the following exchange occurred.

> Q. Did you have any reasons – other reasons to question credibility of any other witness?
>
> A. Not that I recall.
>
> Q. But you didn't review any testimony of anyone, right?
>
> A. No. As I stated before, I referred that on to Mr. Wheeler.
>
> Q. And then you consulted with Mr. Wheeler?
>
> A. Yes.
>
> Q. And in your consultation did you have any concerns regarding credibility of any witness in this case?

**See** Filing No. 213, p. 33-34.

At that point, there was an objection based on a privileged communication and Wilson asserted the privilege. *Id.* Later during the deposition, the following exchanges took place.

> Q. I would like to know what all of the evidence was that supported your decision of a preponderance that – that a preponderance of the evidence showed in your opinion abuse. Are you going to give me that information, or are you going to assert privilege?
>
> A. Assert privilege.

**See** Filing No. 213, p. 45.

> Q. Are you going to tell me specifically how you believe that Devin and Rhonda imposed a future risk to vulnerable children, or are you going to assert privilege?
>
> A. Assert privilege.

**See** Filing No. 213, p. 49.

Similarly, counsel and the deponent engaged in the following discussion:

> Q. Will you waive privilege and tell me what risk of future abuse you and Mr. Wheeler concluded Devin to pose to [J.B.]?
>
> A. No.

4

> Q. Will you waive privilege and tell me what risk of future abuse Devin poses to any other children as far as what you determined with Mr. Wheeler?
> A. No, I won't.
> Q. You're aware that Devin's 16-year-old son lives with him, aren't you?
> A. No, I am not aware of that. I'm sorry, I don't know.
> Q. Are you aware his girlfriend, who is a cancer patient, lives with him?
> A. No.
> Q. Are you aware his girlfriend's daughter, age 13, lives with him?
> A. No.
> Q. Is it your position in consultation with Mr. Wheeler that any of these individuals are at risk from Devin?
> A. Again, privileged.
> Q. What is the risk of future abuse that Ronda poses to [J.B.]? Are you going to tell me that?
> A. Privileged.
> Q. Is it your position that there was more than one incident of alleged abuse of [J.B.]?
> A. I don't know.
> Q. Even if you truly believe in your heart that Devin and Ronda did 100 percent of what they were accused of having done, why not exercise the discretion on – that is shown on Exhibit 101 and expunge them knowing that Devin and [J.B.] are unlikely to ever come into contact again?
> MR. RUMBAUGH: Object to form and foundation
> Q. (BY MS. CHALOUPKA) Or are you going to claim privilege for that as well?
> A. I will claim privilege for that as well.

**See** Filing No. 213, p. 51-53.

Finally, with regard to a letter written by Wilson to his supervisor, Wilson stated some of his opinions were based on his consultation with Mr. Wheeler. See Filing No. 213, p. 64-69. Specifically,

> Q. Then we go to the next sentence, which is stating that, "of course, my experience is that inconclusives are difficult at hearing, but his is one that deserves our efforts." "His" meaning Devin's, right?
>
> A. Yes.
>
> Q. And why does this case deserve our efforts? Or are you going to use the privilege on that one too?
>
> A. Privilege.

**See** Filing No. 213, p. 69.

The plaintiffs contend that Wilson states his decision was made in good faith, but that Wilson now refuses to provide the factual basis for the decision. The plaintiffs contend Wilson should be compelled to give full responses to the questions for which he claims a privilege because the crime-fraud exception to the attorney-client privilege applies. The plaintiffs allege Wilson spoke to Mr. Wheeler prior to the July 8, 2004 decision to deny expungement. Further, in support of their position, the plaintiffs point to the facts that by July 8, 2004, the plaintiffs' names were already on the Central Register, Carter and King were named as defendants in this lawsuit, and Wilson was aware of the lawsuit. The plaintiffs argue the fact that Wilson invokes the privilege is evidence that should be considered against him. Finally, the plaintiffs point out alleged inconsistencies between Wilson's deposition testimony and his affidavit filed in support of the defendants' motion for summary judgment. Specifically, Wilson states in the affidavit that his decision was made solely on his review of the evidence, but during the deposition he states the decision was made in consultation with counsel. The plaintiffs suggest an in camera review of the testimony, if necessary. The defendants deny the crime-fraud exception is applicable in this case.

## ANALYSIS

During a deposition,

> All objections made at the time of the examination to the qualifications of the officer taking the deposition, to the manner of taking it, to the evidence presented, to the conduct of any party, or to any other aspect of the proceedings shall be noted

> by the officer upon the record of the deposition; but the examination shall proceed, with the testimony being taken subject to the objections.

Fed. R. Civ. P. 30(c).

However, "[a]ny objection during a deposition must be stated concisely and in a non-argumentative and non-suggestive manner. A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation directed by the court, or to present a motion under Rule 30(d)(4)." Fed. R. Civ. P. 30(d)(1).

> The attorney-client privilege encourages full and frank communication between attorneys and their clients so that clients may obtain complete and accurate legal advice. But the privilege protecting attorney-client communications does not outweigh society's interest in full disclosure when legal advice is sought for the purpose of furthering the client's on-going or future wrongdoing.

*In re BankAmerica Corp. Sec. Litig.*, 270 F.3d 639, 641 (8th Cir. 2001).

Additionally, "[t]he attorney-client privilege is strongest where a client seeks counsel's advice to determine the legality of conduct before taking action." *Id.* (**citing *Upjohn Co. v. United States***, 449 U.S. 383, 392 (1981). However, communications between attorney and client are not *per se* privileged. For example, the "crime-fraud" exception provides that the attorney-client privilege "'does not extend to communications made for the purpose of getting advice for the commission of a fraud or crime.'" *Id.* (**quoting *United States v. Zolin***, 491 U.S. 554, 563 (1989)). In order to obtain privileged communications based upon the crime-fraud exception, the plaintiffs "must make a threshold showing 'that the legal advice was obtained in furtherance of the fraudulent activity and was closely related to it.'" *Id.* at 642 (citation omitted). This burden cannot be met by merely "alleging that a fraud occurred and asserting that disclosure of any privileged communications may help prove the fraud. There must be a specific showing that a particular document or communication was made in furtherance of the client's alleged crime or fraud." *Id.* (citations omitted).

Here, in camera review of the privileged testimony is unnecessary. The plaintiffs have failed to make any showing that the legal advice was obtained in furtherance of the

7

allegedly fraudulent activity. The plaintiffs show only that the decision to deny expungement was made after, and based in part on, a communication between the decision maker, Wilson, and counsel for NDHHS. Although the plaintiffs claim there are inconsistencies between Wilson's affidavit and his deposition testimony both clearly state he consulted with counsel and reviewed the case file prior to making the decision to deny expungement. Further, during the deposition Wilson stated he did not recall certain specific facts, but testified the conversation was about whether NDHHS "could support that there was enough evidence for the inconclusive listing on the Central Register." **See** Filing No. 213, p. 16-17. Additionally, Wilson sought legal advice because he determined the situation required it, that is "the evidence in [the] case could be supported at a fair hearing" and/or the requesting party has an attorney. *Id.* at p. 9, 13. In this case in particular, Wilson noted in the file that a lawsuit had been filed, which was a "red flag" for obtaining legal advice. *Id.* at p. 9-10. The plaintiffs' showing is insufficient where they show only that an attorney's advice was sought before a decision was made. Accordingly, the plaintiffs' motion to compel based upon the crime-fraud exception to the attorney-client privilege is denied.

**IT IS ORDERED:**

1. The plaintiffs' Motion to Compel Discovery and for Award of Reasonable Attorney's Fees (Filing No. 208) is denied.

2. The Clerk of Court shall seal Filing No. 213, pursuant to the E-Government Act of 2002 and NECivR 5.3, because the filing contains confidential information.

3. The plaintiffs shall have to **on or before March 6, 2006**, to file a response to the defendants' motion for summary judgment (Filing No. 179).

DATED this 13th day of February, 2006.

BY THE COURT:

s/Thomas D. Thalken
United States Magistrate Judge