IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DEVIN KILPATRICK and | ) | |
| RONDA CONN, | ) | |
| | ) | |
| Plaintiffs, | ) | 7:03CV5017 |
| | ) | |
| vs. | ) | ORDER |
| | ) | |
| PAT KING, KATHY CARTER | ) | |
| RON ROSS, STEVEN W. WILSON | ) | |
| and HOLLY BRANDT, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court on the defendants' Motion for Summary Judgment Based Upon Qualified Immunity (Filing No. 179).[1] The defendants filed a brief (Filing No. 180), an index of evidence (Filing No. 185) and a reply brief (Filing No. 237) in support of their motion. The plaintiff filed a brief (Filing No. 233), an index of evidence (Filing No. 232), a supplemental index of evidence (Filing No. 234) and a second supplemental index of evidence (Filing No. 239) in opposition to the motion. The court has carefully reviewed the record, briefs, evidence and the relevant law, and concludes the motion for summary judgment should be granted.

**BACKGROUND**

The plaintiffs initially filed this suit pursuant to 42 U.S.C. §§ 1983 and 1988, alleging violations of their civil rights arising from an investigation and prosecution of claims of child abuse. **See** Filing No. 51 (Second Amended Complaint). On March 30, 2005, the court granted the defendants' motion to dismiss, in part. The defendants' motion was denied with regard to retaliation by placing the plaintiffs on the Central Register of Child Abuse and Neglect Cases (Central Register) (then Claim VI), and the plaintiffs' claim for a procedural

---

[1]The undersigned magistrate judge exercises jurisdiction over this matter after consent by the parties and transfer by United States District Court Judge Joseph F. Bataillon. **See** Filing No. 131.

due process violation of their liberty interest in family integrity (contained in then Claim IV). **See** Filing No. 140.  On April 12, 2005, the plaintiffs filed a Third Amended Complaint alleging two claims pursuant to 42 U.S.C. § 1983.  **See** Filing No. 146.  First, the plaintiffs allege a violation of due process (Claim I).  Second, the plaintiffs allege retaliation by the defendants for engaging in a protected activity (Claim II).  *Id.*  In the Third Amended Complaint, the plaintiffs added the defendants Steven W. Wilson, Chris Hanus and Holly Brandt.  *Id.*  However, on October 28, 2005, the plaintiffs voluntarily dismissed Chris Hanus.  **See** Filing Nos. 203 and 205.

## UNDISPUTED MATERIAL FACTS

1. In August 2002, Devin Kilpatrick (Kilpatrick) and Ronda Conn (Conn) were married to each other, and resided in Scottsbluff, Scotts Bluff County, Nebraska, with Conn's minor child J.B.  **See** Filing No. 146, Third Amended Complaint, p. 2 ¶ 3.

2. Pat King (King), is a Protection and Safety Worker with the Nebraska Department of Health and Human Services located in Gering, Nebraska.  **See** Filing No. 185, Exhibit 1 King Aff. ¶ 1.

3. On the evening of August 13, 2002, King received a telephone call at her home in which the caller indicated that she wanted to make a report of suspected child abuse or neglect regarding J.B.  The caller stated that she was a relative of J.B. and that she had observed injuries to his face that may have resulted from child abuse.  *Id.* ¶ 4.

4. Although it was not in King's regular duties to field reports of suspected child abuse and neglect during off-work hours at home, King was concerned for the safety of the child, and rather than redirecting the caller, she decided to pass this information to law enforcement.  King then contacted the Scottsbluff Police Department.  *Id.*

5. On the evening of August 13, 2002, the Scotsbluff Police, specifically Officer Steve Lopez, went to the home of the maternal grandmother, Shirley Conn, to inspect and interview J.B.  Subsequently, Sgt. Ken Webber and Officer Steve Lopez, went to the residence of Kilpatrick and Conn to further investigate the allegations of child abuse.  *Id.* ¶ 5; **see** *id.* Exhibit 9, partial transcript from Kilpatrick criminal trial.

6. King was not present at any of these investigations, nor did she accompany the police in the questioning of Kilpatrick at the police headquarters. *Id.* Exhibit 1 King Aff. ¶ 5.

7. The police arranged for J.B. to stay with his maternal grandmother, Shirley Conn, to ensure his safety. This decision was made without any input or involvement from King beyond her initial phone call to the police. *Id.* ¶ 6.

8. Initially, Conn agreed to J.B.'s placement with Conn's mother, and on August 14, 2002, she obtained a Protection Order against Kilpatrick preventing him from having any contact with J.B. This was done without any input or suggestion from King. *Id.* ¶ 7.

9. King had no authority to remove children from their homes or to place them without a court order. Only law enforcement has the authority to take children into emergency protective custody in the State of Nebraska. *Id.* ¶ 7; **see also** Neb. Rev. Stat. § 43-248(3).

10. Subsequently, the Scottsbluff Police Department arrested Kilpatrick, and he was charged with felony child abuse on August 13, 2002.

11. King informed Conn that if she continued to be so supportive of Kilpatrick, she could lose her son. This statement was not meant as a threat but as a statement of fact based upon King's experience in child protective services. King and Conn never discussed testifying in any court proceeding, and King never told Conn that she had to or should testify against Kilpatrick in any proceeding. *Id.* Exhibit 1 King Aff. ¶¶ 11-14; Exhibit 10, partial transcript from Kilpatrick criminal trial, at p. 178, line 25 and p. 179 lines 1-3.

12. The Scotts Bluff County Attorney's Office then filed a juvenile petition (*In re J.B.*) in the Scotts Bluff County Court on the basis of its own review and exercise of prosecutorial discretion, and without any input whatsoever from King. The proceeding resulted in an initial custody order placing custody of J.B. with Shirley Conn. Due to problems between Conn and her mother, Shirley Conn, at King's suggestion, legal custody of J.B. was placed with the Department of Health and Human Services (Department) with placement to continue with the maternal grandmother, Shirley Conn. *Id.* Exhibit 1 King Aff. ¶ 10.

13. In December 2002, the plaintiffs sought an investigation of King's conduct related to the abuse investigation through the Scotts Bluff County Attorney's office. **See** Filing No. 232, Exhibit P. On May 30, 2003, an article ran in the Scottsbluff Star-Herald describing the investigation against King and the underlying circumstances. **See** *id.* Exhibit V at p. 4. The May 30, 2003, newspaper articles and others in the Omaha World-Herald and Lincoln Journal Star, contained comments from the plaintiffs' counsel which were critical of King and the Department. **See** *id.* Exhibit V.

14. In July 2003, well after Kilpatrick had been acquitted of the felony child abuse charge and J.B. returned to the custody of Conn, a complaint was filed with the Department by attorney Maren Chaloupka against King. Holly Brandt (Brandt), a Protection and Safety supervisor with the Department was assigned to perform an internal investigation regarding King's handling of the Kilpatrick case. King had been removed from doing Protection and Safety work and was assigned to other duties in a different area of the Department. After a thorough review of the evidence, Brandt, along with Lonnie Stark, concluded that King handled the case in accordance with Department policy. As a result, no disciplinary action was taken against King. *Id.* Exhibit 6 Brandt Aff. ¶¶ 1-4.

15. In the Spring of 2004, the Protection and Safety supervisors in the Western Nebraska Service area were instructed to "clean up old cases" that lacked the required findings or "case status determination." During the review, Brandt came across the Kilpatrick case which had no finding. Brandt then staffed the case with Kathy Carter (Carter), and they determined that Brandt should make the finding and not King because of King's involvement in the litigation. *Id.* ¶¶ 5-6. Brandt and Carter decided it was likely Kilpatrick abused J.B. as reported. **See** Filing No. 232, Exhibit 4, Carter Depo. p. 121, and Exhibit 5, Brandt Depo. p. 17, 61. On May 5, 2004, Brandt entered the finding of "inconclusive," based solely on her review of the evidence and conclusion that there was a preponderance of evidence that the abuse likely occurred. Notices were sent out on that date to Kilpatrick and Conn individually. **See** Filing No. 185, Exhibit 6 Brandt Aff. ¶¶ 5-6.

16. The case status determination affects whether an individual is placed on the Central Register. **See** Neb. Rev. Stat. § 28-720 and -720.01 (Supp. 2005). By Nebraska statute, the Department is required to keep a register of child protection cases, specifically

"containing records of all reports of child abuse or neglect opened for investigation . . . and classified as either court substantiated or inconclusive." Neb. Rev. Stat. § 28-718 (Supp. 2005). The Central Register lists those cases assigned the status of "inconclusive," "court pending" or "court substantiated." Neb. Rev. Stat. § 28-720. Inconclusive means "the department's determination of child abuse or neglect against the subject of the report of child abuse or neglect was made, by a preponderance of the evidence, based upon an investigation." Neb. Rev. Stat. § 28-720(3). Unfounded reports of child abuse, those reports not fitting under the terms listed above, are not maintained in the Central Register. Neb. Rev. Stat. § 28-720.01. The release of information from the Central Register is limited by Neb. Rev. Stat. § 28-726.

17. Steven Wilson (Wilson), a program specialist in the Protection and Safety Division of the Department, had nothing to do with the original decision on the case finding by Brandt which resulted in the placement of Kilpatrick and Conn on the Central Register in the inconclusive category. **See** Filing No. 185, Exhibit 4 Wilson Aff. ¶ 5. On May 10, 2004, Wilson received a written request for expungement of the Conn and Kilpatrick entries on the Central Register. Wilson reviewed the related files, including color photographs of the alleged victim, J.B., and consulted with legal counsel. Wilson made the determination that the entries should remain on the register, based solely on his review of the evidence in the case and his agreement with Brandt that there is a preponderance of the evidence in the case that it was more likely than not the alleged abuse occurred. *Id.* Exhibit 4 Wilson Aff. ¶¶ 1-4; **see also** Exhibits 14 and 15 (July 8, 2004 letters denying expungement).

18. On April 26, 2006, the Department, on administrative appeal, reversed the decision to enter Conn's name on the Central Register as inconclusive of emotional neglect of J.B. on August 13, 2002. **See** Filing No. 239, Exhibit A. Similarly, the Department reversed the decision to enter Kilpatrick's name on the Central Register as inconclusive of physical abuse of J.B. *Id.* Exhibit B.

19. Ron Ross (Ross) was the Director of the Department from January, 1999 to January, 2004. As the director of an agency employing nearly 5,000 individuals with direct responsibility for over thirty programs and many more sub-programs, Ross delegated the day-to-day oversight of program matters to administrators within the agency. He avoided

any attempts to micro-manage, in terms of making specific case decisions. Ross knew nothing of the Kilpatrick protection and safety case until he was informed of the existence of a complaint that had been filed against King. Ross was also informed of the results of the investigation against King, where it was determined King followed Department policy and that no personnel action was required. *Id.* Exhibit 3 Ross Aff. ¶¶ 1-5.

## ANALYSIS

Pursuant to the Federal Rules of Civil Procedure, summary judgment is appropriate when, viewing the facts and inferences in the light most favorable to the nonmoving party, "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law." **See** Fed. R. Civ. P. 56(c); **McAllister v. Transamerica Occidental Life Ins. Co.**, 325 F.3d 997, 999 (8th Cir. 2003). When making this determination, a court's function is not to make credibility determinations and weigh evidence, or to attempt to determine the truth of the matter; instead, a court must "determine whether there is a genuine issue for trial." **Anderson v. Liberty Lobby, Inc.**, 477 U.S. 242, 249 (1986); **see also Johnson v. Crooks**, 326 F.3d 995 1007-08 (8th Cir. 2003). "An issue of material fact is genuine if it has a real basis in the record." **Hartnagel v. Norman**, 953 F.2d 394, 395 (8th Cir. 1992) (**citing Matsushita Elec. Indus. Co. v. Zenith Radio Corp.**, 475 U.S. 574, 586-87 (1986)). A court must "look to the substantive law to determine whether an element is essential to a case, and '[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment.'" **Dulany v. Carhahan**, 132 F.3d 1234, 1237 (8th Cir. 1997) (**quoting Anderson**, 477 U.S. at 248).

Summary judgment is proper when the plaintiff fails to demonstrate the existence of a factual dispute with regard to each essential element of his claim. **Bialas v. Greyhound Lines, Inc.**, 59 F.3d 759, 762 (8th Cir. 1995). "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupported claims or defenses, and [the rule] should be interpreted in a way that allows it to accomplish this purpose." **Celotex Corp. v. Catrett**, 477 U.S. 317, 323-24 (1986). A party seeking summary judgment bears the responsibility of informing the court "of the basis for its

motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." **Tenbarge v. Ames Taping Tool Sys., Inc.**, 128 F.3d 656, 657 (8th Cir. 1997) (**quoting Celotex**, 477 U.S. at 325 (noting that the movant must show "there is an absence of evidence to support the nonmoving party's case.")). Under this court's local rules:

> The moving party shall set forth in the brief in support of the motion for summary judgment a separate statement of material facts as to which the moving party contends there is no genuine issue to be tried and that entitle the moving party to judgment as a matter of law.

**See** NECivR 56.1(a)(1).

In the face of a properly-supported motion, "[t]he burden then shifts to the nonmoving party to 'set forth specific facts showing that there is a genuine issue for trial.'" **Prudential Ins. Co. v. Hinkel**, 121 F.3d 364, 366 (8th Cir. 1997) (**quoting** Fed. R. Civ. P. 56(e)). A nonmoving party may not rest upon the mere allegations or denials of its pleadings but, rather, must show specific facts, supported by affidavits or other proper evidence, showing that there is a genuine issue for trial. **See** Fed. R. Civ. P. 56(e); **Liberty Mut. Ins. Co. v. FAG Bearings Corp.**, 153 F.3d 919, 922 (8th Cir. 1998). A nonmoving party must offer proof "such that a reasonable jury could return a verdict for the nonmoving party." **Anderson**, 477 U.S. at 248. Additionally, under this court's local rules:

> The party opposing a motion for summary judgment shall include in its brief a concise response to the moving party's statement of material facts. The response shall address each numbered paragraph in the movant's statement and, in the case of any disagreement, contain pinpoint references to affidavits, pleadings, discovery responses, deposition testimony (by page and line), or other materials upon which the opposing party relies. Properly referenced material facts in the movant's statement will be deemed admitted unless controverted by the opposing party's response.

**See** NECivR 56.1(b)(1) (emphasis added).

**A.     QUALIFIED IMMUNITY**

Qualified immunity shields government officials from liability, in their individual capacity, "for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." ***Harlow v. Fitzgerald***, 457 U.S. 800, 818 (1982).  Furthermore, "qualified immunity provides ample protection to all but the plainly incompetent or those who knowingly violate the law." ***Malley v. Briggs***, 475 U.S. 335, 341 (1986).  For a civil rights plaintiff to survive a motion for summary judgment on qualified immunity grounds, "a plaintiff must assert a violation of a constitutional right, show that this right is clearly established, and raise an issue of material fact as to whether the defendant would have known that the conduct in question violated the clearly established right."  ***Biby v. Board of Regents***, of Univ. of Nebraska at Lincoln, 419 F.3d 845, 850 (8th Cir. 2005).

   **1.     Procedural Due Process** (Claim I)

The plaintiffs allege in Claim I of their complaint that King violated their due process rights.  **See** Filing No. 146, ¶¶ 14-17.  Specifically, Kilpatrick and Conn allege their right to due process was violated based on King's acts and omissions because King's acts and omissions interfered with their fundamental right to privacy and freedom from excessive interference with their marriage (to each other) and with raising a family.  ***Id.***  In the plaintiffs' response to the motion for summary judgment they state:  "Plaintiffs submit without argument their First Claim for Relief." **See** Filing No. 233, Plaintiffs' Brief p. 26 n.11.

The plaintiffs invoke jurisdiction under 42 U.S.C. § 1983 and the Fourth Amendment. Section 1983 "is not itself a source of substantive rights, but merely provides a method for vindication of federal rights elsewhere conferred."  ***Graham v. Connor***, 490 U.S. 386, 393-94 (1989). The court must thus determine the constitutional right allegedly infringed by the defendants.  ***Id.***

The Due Process Clause of the Fourteenth Amendment provides that no state shall "deprive any person of life, liberty, or property, without due process of law."  U.S. Const. amend. XIV, § 1.  The fundamental concept behind any due process claim is the opportunity to be heard at a meaningful time and in a meaningful manner.  ***Winegar v. Des***

*Moines Indep. Community Sch. Dist.*, 20 F.3d 895, 899-900 (8th Cir. 1994)  (**citing** *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)).  What may properly constitute due process may vary according to the particular situation.  *Id.* (**citing** *Zinermon v. Burch*, 494 U.S. 113, 127 (1990)).  To determine what process is due, the Court must weigh three factors: 1) the private interest involved, 2) the risk of erroneous deprivation of such an interest through procedures used and probable value of additional procedural safeguards, and 3) the government's interest, including the function involved and the fiscal and administrative burden additional procedural requirements would entail.  *Mathews*, 424 U.S. at 335.

The Supreme Court has long recognized family relationships as one of the liberties protected by the Due Process Clause of the Fourteenth Amendment.  **See** *Smith v. Organization of Foster Families for Equality & Reform*, 431 U.S. 816, 842 (1977).  "There does exist a 'private realm of family life which the state cannot enter,' that has been afforded both substantive and procedural protection."  *Id.* (footnote and citation omitted) (**quoting** *Prince v. Massachusetts*, 321 U.S. 158, 166 (1944)).  The plaintiffs are entitled to procedural due process if they can show King deprived them of a constitutionally protected liberty or property interest.  **See** *Putnam v. Keller*, 332 F.3d 541, (8th Cir. 2003).  The Eighth Circuit has "recognized a right to familial relations, which includes the liberty interest of parents in the custody, care, and management of their children."  *King v. Olmsted County*, 117 F.3d 1065, 1067 (8th Cir. 1997); **see also** *Lehr v. Robertson*, 463 U.S. 248 (1983).

In Claim I of the complaint, the plaintiffs allege that King's acts and omissions interfered with each plaintiff's fundamental rights to privacy and freedom from excessive interference with marriage with raising a family.  **See** Filing No. 146, ¶¶ 15-16.  The defendants argue King's conduct under the circumstances was objectively reasonable and thus King's conduct is protected by qualified immunity.  King lacked direct involvement in the removal of J.B. from the plaintiffs' custody, care and management.  Further, King's conduct was that of a reasonable official under the circumstances.  An official acting as King did would not have known she was violating the plaintiffs' right to maintaining the family relationship.  The plaintiffs fail to allege any disputed material facts showing there

9

is a genuine issue for trial on this issue. Accordingly, the defendants' motion for summary judgment will be granted with regard to Claim I.

### B.     Retaliation (Claim II)

The plaintiffs allege in Claim II of their complaint that the defendants retaliated against the plaintiffs for the plaintiffs' exercising constitutionally protected rights by "effectuating the placement of KILPATRICK and CONN on the Center Register and leaving Plaintiffs on the Central Register." **See** Filing No. 146, ¶¶ 19-27. The plaintiffs state their protected conduct includes speaking to reporters from the Omaha World-Herald newspaper, filing the instant lawsuit and requesting a special prosecutor to investigate King's activities. The plaintiffs state that after engaging in these activities, on May 5, 2004, the plaintiffs were notified they had been placed on the Central Register for the allegations associated with the criminal charge against Kilpatrick and the juvenile proceeding involving Conn, notwithstanding both proceedings were resolved the plaintiffs' favor.

"In order to establish the elements of a retaliation claim under 42 U.S.C. § 1983, the plaintiff must show that she was engaged in constitutionally protected activity, that [the defendant's] adverse action caused her to suffer an injury which would 'chill a person of ordinary firmness from continuing . . . in that activity,' and that the adverse action was motivated in part by [the plaintiff's] exercise of her constitutional rights." ***Carroll v. Pfeffer***, 262 F.3d 847, 850 (8th Cir. 2001) (**quoting *Bloch v. Ribar***, 156 F.3d 673, 678 (6th Cir. 1998)); **see *Revels v. Vincenz***, 382 F.3d 870, 876 (8th Cir. 2004). Further, to state a claim for damages under § 1983, a plaintiff must allege specific facts to demonstrate that the defendants were personally or directly involved in the violation, that is, that there was "personal participation by one who ha[d] knowledge of the facts that rendered the conduct illegal." ***Provost v. City of Newburgh***, 262 F.3d 146, 155 (2d Cir. 2001). The personal involvement requirement may be satisfied by showing the defendant (I) personally participated in the violation, (ii) was grossly negligent in supervising subordinates who committed the wrongful acts, or (iii) exhibited deliberate indifference by failing to act on information indicating the unconstitutional acts were occurring. ***Id.*** at 154; **but see *Gill v. Hoadley***, 261 F. Supp. 2d 113, 127 (N.D.N.Y. 2003) ("A supervisor cannot be liable for

damages under section 1983 solely by virtue of being a supervisor--there is no respondeat superior liability under section 1983.").

The plaintiffs contend the notices of placement onto the Central Register were from the Gering office of NDHHS, which is supervised by Carter and is the primary home office of King. Therefore, the plaintiffs allege Carter, Brandt and King placed the plaintiffs on the Central Register solely in retaliation for exercising their rights under the First Amendment in speaking to reporters, the Fourteenth Amendment in filing this lawsuit, and for opposing the defendants' unlawful conduct. The plaintiffs allege the defendants King, Wilson and Brandt participated, through personal conduct and/or supervisory authority, in the decision to place the plaintiffs onto the Central Register or leave the plaintiffs' names on the Central Register after evidence existed that the placement was wrongful.[2]

The defendants admit the plaintiffs' names were placed on the Central Register. However, the plaintiffs have failed to allege any facts to support the contention that any defendant other than Carter and Brandt had any personal involvement in making the decision to place the plaintiffs' names on the Central Register. The plaintiffs fail to allege any facts to support liability for any other defendant as a supervisor over the decision made by Carter and Brandt. Similarly, the only defendant who had any personal involvement in refusing the request for expungement was Wilson. The plaintiffs do not allege liability against any defendant as the supervisor over Wilson. Accordingly, the defendants' motion is granted with regard to the defendants King and Ross who had no personal involvement or supervisory authority supporting liability. However, the plaintiffs have alleged sufficient facts to show Carter, Brandt and Wilson had personal involvement.

There is no dispute the plaintiffs were engaged in protected activities or that they suffered adverse action. However, to establish a retaliation claim under 42 U.S.C. § 1983, the plaintiffs must also show that the adverse action was motivated in part by the plaintiffs' exercise of their constitutional rights. **See *Carroll***, 262 F.3d at 850. The plaintiffs contend

---

[2]In the Amended Complaint, the plaintiffs do not allege Ross engaged in either personal or supervisory responsibility over the decision to place or keep the plaintiffs on the Central Register. Additionally, the plaintiffs "submit without argument their claims against Ross under their Second Claim for Relief." **See** Filing No. 233 Plaintiffs' Brief, p. 26 n.11.

the timing of the defendants' conduct is evidence of personal animus against the plaintiffs. Specifically, the plaintiffs point to the fact that the Central Register determination was not made until May 5, 2004, 18 months after Kilpatrick's acquittal of the related criminal charges and dismissal of the proceedings against Conn. The plaintiffs allege this was the same time period the plaintiffs were seeking discovery in this lawsuit by means of a motion to compel. **See** Filing No. 38 (Motion to Compel dated Apr. 28, 2004). The decision was also made after the plaintiffs made remarks to newspapers in May 2003, media coverage in June 2003, and the filing of this lawsuit in August 2003. Further, the plaintiffs point to evidence that Carter's and Brandt's decision was made without review of the Kilpatrick criminal trial evidence or other information outside the Department's record.

Wilson denied expungement on July 8, 2004. The plaintiffs similarly argue circumstantial evidence suggests Wilson's decision was based on personal animosity. The plaintiffs state Wilson failed to review the Kilpatrick criminal trial evidence and other evidence bearing on the expungement request. Further, the plaintiffs state Wilson's decision was made after consultation with legal counsel who was knowledgeable about this then-pending lawsuit.

Finally, the plaintiffs allege the defendants made an admission about the reasons for their decision in a document associated with the departmental appeal of the expungement denial. Counsel for the defendants wrote:

> As the Appellants' attorney acknowledges in her motion, they early took their complaints to the news media. There they began a public attack on the worker and the Department, and they have maintained their attacks in the media and in several other forums. They attacked the work and integrity of the protection and safety worker assigned to the case, and they demanded that the Department undertake an internal investigation of the worker. They demanded the Department's considered attention and investigation of the mater. They have received it. And <u>the result is this listing</u>. The Department submits that the facts demand and support the listing.

**See** Filing No. 232, Exhibit Z (HHS brief in opposition to summary expungement during departmental appeal) (emphasis added). The plaintiffs interpret the statement as "the result of [the Plaintiffs' criticism and request for investigation] is this listing." However, the

phrase may also be interpreted as the result of "the Department's considered attention and investigation of the matter" is the Central Register listing. Accordingly, the court will not deem the statement an admission of retaliation in this lawsuit.

The defendants argue the placement and retention of the plaintiffs' names on the Central Register was based on the information in the Department's record and a considered determination after the Department's investigation. Further, Carter, Brandt and Wilson believed it was more likely true than not true that Kilpatrick abused J.B., which would support the placement of the plaintiffs on the Central Register listed with an "inconclusive" determination.

The plaintiffs' reliance on the standard of proof in **Bloch** is misplaced. In **Bloch**, the defendants filed a motion to dismiss based on qualified immunity and the court was bound by the standards of a motion under Federal Rule of Procedure 12(b)(6). **Bloch**, 156 F.3d at 681. There the plaintiffs met their burden of alleging facts, if proven, would support their claim. The **Bloch** plaintiffs alleged "a deputy sheriff told them to stop criticizing [the defendant] or risk being used for 'political purposes.'" *Id.* at 682.

In contrast, the plaintiffs here must show some evidence indicting the defendants' conduct was motivated by retaliation for the protected conduct. **See *Barrett v. Harrington***, 130 F.3d 246, 263 (6th Cir. 1997).

In further contrast to **Bloch**, the plaintiffs allege less factual support for the retaliation claim. The timing of the plaintiffs' placement on the Central Register was not close in time to the constitutionally protected activity. The plaintiffs filed this lawsuit in August 2003 after they had made statements to the media. The conduct of the defendants occurred in May and July of 2004. "An inference of a causal connection between [protected conduct] and [adverse action] can be drawn from the timing of the two events, but in general more than a temporal connection is required to present a genuine factual issue on retaliation." ***Wallace v. DTG Operations, Inc.***, 442 F.3d 1112, 1119 (8th Cir. 2006) (employment context noting two weeks supported *prima facie* case of retaliation) (quotation omitted); ***Peterson v. Scott County***, 406 F.3d 515, 524-26 (8th Cir. 2005) (qualified immunity denied for employment retaliation when adverse action occurred two weeks after protected conduct). Clearly, "[t]emporal proximity rises in significance the closer the adverse activity

occurs to the protected activity." ***Wedow v. City of Kansas City, Mo.***, 442 F.3d 661, 675 (8th Cir. 2006) (employment context) (quotation omitted); **see** ***Clark County Sch. Dist. v. Breeden***, 532 U.S. 268, 273 (2001) (citing cases in which a three-month period and a four-month period, respectively, were insufficient to establish a causal link for retaliation); **see also** ***Wallace v. Sparks Health Sys.***, 415 F.3d 853, 859 (8th Cir. 2005) (noting passage of one year weakens the showing of a causal connection between protected activity and adverse action, in employment context); ***Dhyne v. Meiners Thriftway, Inc.***, 184 F.3d 983, 989 (8th Cir. 1999)  (stating that a four-month gap, standing alone, weakened the showing of a causal link in a retaliation claim, in employment context). In this case the timing, by itself, of more than nine months between the protected conduct and the adverse action cannot support the plaintiffs' claim for retaliation. Similarly, the defendants explain through uncontroverted evidence why the Department delayed in entering the plaintiffs' names into the Central Register. The defendants' explanation does not support, but detracts from a showing of retaliation.

Further, the plaintiffs argue, as evidence of a retaliatory motive, that placement and retention on the Central Register was unsupported by the underlying facts. However, the underlying facts examined and relied upon by the decision makers may support the inconclusive finding. The plaintiffs' allegations that the defendants failed to take into consideration all of the available evidence, particularly the evidence negating a finding of abuse and neglect, does not create a genuine issue of material fact precluding summary judgment. Although the defendants' review of the record was unexhaustive and may have been remiss, such conduct does not support the plaintiffs' retaliation claim. **See** ***Provost***, 262 F.3d at 155 (the plaintiffs' must show the actor knew the conduct was illegal or exhibited deliberate indifference by failing to act on information indicating the unconstitutional acts were occurring). Similarly, even though the placement and retention decisions were ultimately reversed by the Department, the reversal does not create a genuine issue of material fact precluding summary judgment that the original decisions were retaliatory.

In sum, the plaintiffs' fail to show a genuine issue of material fact exists to preclude summary judgment with regard to their retaliation claim. The undisputed facts show the

defendants King and Ross had no personal involvement or supervisory authority supporting liability. The plaintiffs fail to raise a genuine issue of material fact showing Carter, Brandt or Wilson knew or acted with deliberate indifference to the plaintiffs' constitutionally protected activities. Upon consideration,

**IT IS ORDERED:**

The defendants' Motion for Summary Judgment Based Upon Qualified Immunity (Filing No. 179) is granted.

DATED this 1st day of August, 2006.

BY THE COURT:

 s/Thomas D. Thalken
United States Magistrate Judge